## DES CHAMPS v. BISHOPVILLE NATIONAL BANK

(140 S. E., 698)

1. BAILMENT—COMPLAINT, ALLEGING CONVERSION OF PLAINTIFF'S COTTON BY BAILEE TO WHOM IT WAS SHIPPED AT CREDITOR'S REQUEST, HELD INSUFFICIENT AGAINST DEMURRER TO HOLD CREDITOR SOLELY LIABLE.—Complaint, alleging that plaintiff shipped cotton belonging to him to a third person, at the request of bank to whom he owed money, which cotton was subsequently converted by such third person, *held* insufficient as against demurrer to hold bank liable for conversion, since, alleging bailment by mutual agreement, plaintiff had no right to cast on bank the entire loss due to fraudulent conversion.

2. PLEADING—ALLEGATION OF FACT IS ASSUMED TRUE FOR PURPOSES OF DEMURRER.—Allegation of fact contained in complaint is assumed to be true for purposes of demurrer interposed thereto.

Before TOWNSEND, J., Lee, November, 1925. Order affirmed and case remanded.

Action by L. W. Des Champs against the Bishopville National Bank. From an order sustaining a demurrer to the complaint, plaintiff appeals.

*Mr. Philip H. Arrowsmith,* for appellant, cites: *For the purpose of demurrer, the allegations of the complaint are taken to be true:* 97 S. C., 413; 98 S. C., 152. *For the purpose of testing a complaint on demurrer the allegations are taken most strongly in favor of the plaintiff and against the defendant:* Sec. 420, Code Civ. Proc; 110 S. C., 534. *"Complaint":* Sec. 399, Code Civ. Proc. *Principal and Agent:* 88 S. C., 40; 13 S. C., 5.

*Mr. R. E. Dennis,* for respondent, cites: *Bank responsible only for reasonable care in selection of agency, especially as such agency was acting for benefit of both parties:* 91 S. C., 96.

December 15, 1927.

The opinion of the Court was delivered by MR. JUSTICE COTHRAN.

This is an appeal from an order of his Honor Judge Townsend sustaining a demurrer to the complaint.

The facts, as we gather them from the allegations of the complaint, are substantially these:

During the year 1920 the plaintiff, Des Champs, was indebted to the defendant bank, for borrowed money, in the sum of $6,000. He was unable to meet his obligation at maturity, as he declares, "because of the depressed market and financial conditions then obtaining." About the first of the year 1921 the plaintiff had on hand 40 bales of cotton, stored upon his premises, as he declares, "to which cotton the defendant bank had the right to look for payment of the indebtedness of the plaintiff, which fact was recognized by both plaintiff and defendant." (The nature of the bank's claim upon the cotton is not defined in the complaint; it may be assumed, however, that it was some kind of lien which gave the bank the right to seize the cotton and apply the proceeds to the payment of the $6,000 indebtedness.) About February 16, 1921, the bank directed Des Champs to ship the 40 bales to Barrett & Co., of Augusta, Ga., to which direction Des Champs demurred, but, upon the bank's insistence that the cotton be so shipped, on the following day Des Champs complied with "the request of the defendant" by shipping the cotton in his own name to Barrett & Co. He immediately delivered the bills of lading for the cotton to the bank. On February 25, 1921, Des Champs executed a mortgage of real estate to the bank as additional security to his debt, as he declares, "the expectation of both parties thereto being that within a reasonable time market and financial conditions would so react that the defendant might sell and dispose of the forty bales of cotton delivered to Barrett & Co. by the plaintiff under its direction for an amount sufficient to discharge the indebtedness of the plaintiff to the defendant, but that in the meantime the account of the plaintiff

with the defendant would be satisfactorily secured and collateralized."

The market, evidently, did not react as the parties had hoped, and the cotton remained on storage with Barrett & Co., and was supposed to be in their hands, until July 30, 1923, more than two years after receipt by them, at which time Barrett & Co. collapsed. In the meanwhile, it is alleged, all transactions with Barrett & Co. in regard to the cotton were conducted by the bank. (What these transactions were does not appear in the complaint.) In April, 1924, as alleged, the notes of Des Champs to the bank were renewed upon the assurance of the bank that it would realize at least $2,400 out of the claim against Barrett & Co. The plaintiff has received no benefit from the cotton, except a credit of 5 cents per pound which the bank drew out from Barrett & Co. before the collapse.

It is alleged in the complaint that the bank "has negligently and carelessly failed to take any action against Barrett & Co., for the collection of the reasonable value of the cotton converted by Barrett & Co., after the receipt of the same, and prior to its failure"; and that, by reason of the willful and fradulent default, miscarriage, and misappropriation of the said cotton "by Barrett & Co., as the agents of the defendant, the plaintiff has been damaged in the sum of $10,-000 actual and punitive damages, for which he prays judgment, and that all notes, mortgages, and other securities and collateral of the plaintiff held by the bank be canceled of record and delivered up to him."

The real question in the case is whether the complaint states sufficient facts to hold the bank liable for the conversion of the cotton by Barrett & Co., which, by the allegation of that fact in the complaint, is assumed to be true, for the purposes of the demurrer; and that depends primarily upon the further question as to the nature of the relation which Barrett & Co. sustained towards the parties

to this suit, one or the other or both. It is not concluded by the allegation in the complaint that Barrett & Co. were the agents of the bank. Where the facts are set forth which show a different relation between them, the allegation is simply an erroneous conclusion of law, and not at all the statement of a fact.

Reading between the lines, we think that the complaint discloses this situation: Des Champs owed the bank $6,000, which was past due and which he was unable to pay. He had on hand 40 bales of cotton upon which the bank had some kind of a lien. Market and financial conditions were depressed. Des Champs was confronted with the prospect of losing the entire 40 bales if the bank foreclosed upon him. His only hope was to hold the cotton for a rise in the market, and this he could not do without the consent of the bank.

It is very manifest that the arrangement that Des Champs should ship the cotton to Barrett & Co., although, as alleged demurred to by Des Champs, was the result of an agreement between them which accommodated Des Champs' desire to hold his cotton; and it is practically certain that the execution of a mortgage upon real estate by Des Champs as additional security, a few days after the bills of lading were delivered by him to the bank, was a part of the agreement by which Des Champs was to accomplish his hopeful purpose of holding his cotton, for he alleges:

" * * * The expectation of both parties thereto being that, within a reasonable time, market and financial conditions would so react, that the defendant might sell and dispose of the 40 bales of cotton delivered to Barrett & Co., by the plaintiff, under its direction, for an amount sufficient to discharge the indebtedness of the plaintiff to the defendant, but that in the meantime the account of the plaintiff with the defendant would be satisfactorily secured and collateralized."

Now, after the arrangement for the benefit of Des Champs, whose only hope was a rise in cotton, had been faithfully carried out by the bank, he is attempting to cast the entire loss resulting from the collapse of the bailees mutually agreed upon by them upon the bank.

If the cotton had been delivered by Des Champs to the bank, and, instead of enforcing its claim upon it which the complaint alleges that it had, the bank had shipped it to Barrett & Co., to be stored and sold whenever the bank chose to order it sold, there could be no doubt but that the loss of the cotton in the hands of Barrett & Co. should fall upon the bank. And so, if Des Champs had shipped the cotton to Barrett & Co., to be stored and sold whenever he chose to order it sold, the loss should fall upon Des Champs.

But the complaint does not allege the facts fitting either of these hypotheses; naturally it would not have alleged the latter. It alleges a bailment of the cotton with Barrett & Co., by mutual agreement between himself and the bank; and the question is, under these circumstances, has Des Champs the right to cast upon the bank the entire loss due to the fraudulent conversion of the cotton by the bailees, Barrett & Co.?

The complaint proceeds upon the theory that the transaction was entered into for the sole benefit of the bank, and that Barrett & Co. were the agents solely of the bank which must be held responsible to the plaintiff for the defalcation of its agents. The facts alleged, however, do not sustain either element of this theory. Barrett & Co., under these allegations, were at most agents for both parties, and, at best, the transaction was consummated for the mutual benefit of both. The plaintiff's demand is that the bank stand the entire loss. If he had sought to hold the bank liable for a part of the loss, his allegations should have been to the effect that Barrett & Co. were acting as the

mutual agents of both parties. Even then we are not to be understood as holding that he could have succeeded, as that question is not before us. He certainly cannot under his complaint hold the bank for the entire loss, and that is all that is intended to be decided.

Failure of a mutual agent to perform the mutual agreement, according to its terms, cannot be imputed to one party to the agreement, so as to render him liable to the other party as for a breach of the agreement. *Crippen v. Hope,* 34 Mich., 55.

"Both parties are equally responsible for the unauthorized acts of a third person whom they have mutually chosen to act between them, and where one of them has done all that by the agreement he was to do, he is not to be held liable to the other for the failure of their mutual agent to do his part." *Crippen v. Hope,* 34 Mich., 55.

Of course, if the transaction was intended as an accommodation to the plaintiff, practically solely for his benefit, there would be no liability at all for the loss upon the bank. This is suggested as probable by the fact that the bank had the 40 bales as security, and that the plaintiff had the land he mortgaged, which could have been subjected to an execution issued upon a judgment to be obtained by the bank.

The judgment of the Court is that the order sustaining the demurrer be affirmed, and that the case be remanded to the Circuit Court, with leave to the plaintiff, within 10 days after the remittitur shall have been filed, to serve an amended complaint as he may be advised.

MR. CHIEF JUSTICE WATTS and MESSRS. JUSTICES BLEASE and STABLER and MR. ACTING ASSOCIATE JUSTICE R. O. PURDY concur.